## Gus Datillo Fruit Company v. Louisville & Nashville Railroad Company.

(Decided December 14, 1928.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Carriers.—Movement of car of bananas from railroad yards, where consignee changed ventilation without changing written instructions as required by tariff, to siding of another company several blocks away, at consignee's direction, held not mere switching movement, but reconsignment or diversion of shipment, so that railroad company was not liable for loss by chilling as result of employee in charge of car during transfer again changing ventilation to accord with written instructions attached to waybill.

2. Carriers.—Tariff provision that all protective service to certain fruits in transit will be governed by shipper's instructions on bill-ing held not void as attempted limitation of carrier's liability for its negligence, in violation of Cummins Amendment to Interstate Commerce Act (49 USCA sec. 20 [11]).

3. Carriers.—Evidence that standard contract of purchase and sale between banana importers and buyers requires notice of every claim against seller immediately after arrival of shipment, and filing of written statement of basis thereof within 24 hours, held incompetent, in buyer's action against railroad company for damages to bananas in transit.

4. Appeal and Error.—In banana buyer's action against railroad company for damages to shipment in transit by chilling and rough handling, admission of evidence of standard contract between banana importers and buyers in reference to claim for chilling, which was not submitted to jury, held not prejudicial error, not being misleading in consideration of claim for rough handling.

5. Carriers.—The true measure of damages for injuries to bananas by rough handling in transit is not difference between value thereof when received by carrier and their fair market value when delivered to consignee, but difference between fair and reasonable market value thereof at time and place of delivery in their then condition and condition they would have been if not damaged in transit.

6. Trial.—In action against carrier for damage to fruit in transit by rough handling, defect in instruction to award as damages difference between value thereof when received by carrier and fair market value when delivered to plaintiff was cured by instruction to find for plaintiff if fruit was bruised and injured while in defendant's possession, either before or after arrival, where jury returned verdict for defendant.

T. C. MAPOTHER for appellant.

WOODWARD, WARFIELD & HOBSON and WILBUR O. FIELDS for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This appeal is from a judgment denying plaintiff's claim for damages to two shipments of bananas. The petition is in two paragraphs, in the first of which damage is asserted to the extent of $420.85 due to alleged chilling of the fruit by action of the carrier in the Louisville terminal. In the second paragraph it is alleged that the fruit was bruised and injured by improper handling while in the custody of the carrier, and damages in the sum of $261 are claimed.

The trial court gave a peremptory instruction to find for the defendant on the first claim, because of the failure of the plaintiff to comply with tariff regulations controlling protective service for perishables, such as bananas, and on the second claim the jury found for the defendant. Plaintiff appeals.

The first claim arose out of a shipment from New Orleans, La., consisting of a carload of bananas consigned to Jas. St. Charles & Son, at Nashville, Tenn., and reconsigned by St. Charles & Son to plaintiff at Louisville, Ky. St. Charles & Son delivered the following written instructions to the carrier:

"Please divert car No. FGE16054 now at Harrison street, location 460, billed to Jas. St. Charles & Son, to Gus Datillo Fruit Company, Louisville, Kentucy. Plugs out, vents on the iron, all charges to follow car to destination."

This diversion order was received by the carrier on February 25, 1926, and the car arrived in Louisville, Ky., on the following day. Plaintiff was notified of its arrival, went to the railroad yards, and, with the assistance of an employee of the railroad company, located the car. He found the ventilation of the car was in accordance with the written instructions that had been given by the consignor; that is, the plugs were out and vents on the iron, which meant that the vents were elevated; so as to allow air to pass down through the ice bunkers to ventilate the contents of the car. At the time plaintiff located the car the outside temperature was about 40 degrees, and in anticipation of a drop in temperature he closed the plugs and vents with the assistance of an employee of the railroad company. He then directed the carrier to deliver the car to the Piggly Wiggly Valley Company on its siding at Eleventh and Garland streets in Louisville, several blocks from the yards where it was then located. The car was transferred as directed, and the employee in charge of it while it was being transferred, observing that the ventilation was not arranged in accordance with the written instructions in his possession and attached to the waybill, took the plugs out and elevated the vents, so as to conform to the written instructions. When the Piggly Wiggly Valley Company examined the car on the following morning, it was discovered that a portion of the fruit was chilled and damaged.

It is appellant's contention that the shipment was not diverted or reconsigned after its arrival at Louisville, but that its removal from the yards after he had changed the ventilation of the car was merely a switching movement, and, the car being in his custody, the carrier was not controlled by the written instructions as to

ventilation given by the consignor at Nashville. On the other hand, appellee contends that the direction of Datillo to deliver the car on the siding of the Piggly Wiggly Valley Company amounted to a reconsignment or diversion, and that the carrier was still bound by the written instructions in its possession, and it relies upon Supplement 56 to Perishable Protective Tariff No. 2, filed with the Interstate Commerce Commission February 3, 1926, section 95a, which is as follows:

> "*Diversions and Reconsignments.* (A) Diversions or reconsignment orders changing destination must include proper instructions in writing (see rule No. 80 of tariff as amended), as to refrigeration, ventilation or other protective service beyond reconsigning point, and no change from one class of service to another will be permitted except as specifically authorized by the provisions of this tariff (see rules Nos. 75, 200, 500, 510 and 515 of tariff as amended). Such instructions must be entered on billing accompanying the freight. (See rule No. 85 of tariff as amended.) The previous instructions must be canceled and billing endorsed accordingly.
>
> "(B) Shippers' instructions for protective service beyond reconsigning point must include instructions to transfer if this is necessary for the protective service requested. (See rule 90 of tariff.)
>
> "Reissue. Effective February 10, 1926, in Supplement No. 53."

Section 105 of Perishable Protective Tariff No. 2 is as follows:

> "*Bananas, Cocoanuts, and Pineapples, Carloads —Handling of.* Bananas, cocoanuts and pineapples in carloads must not be iced, re-iced, ventilated or given other protective service against heat or cold without specific instructions from shipper only or caretaker in charge of cars.
>
> "All such protective service to be furnished to bananas, cocoanuts and pineapples in transit will be governed by the shipper's instructions on the billing subject to controlling instructions from caretaker in charge and the caretaker's instructions when he abandons the car shall be given by him in writing and attached securely to the shipping bill to accompany the car to ultimate destination.

"In the absence of the caretaker in charge of car, or if caretaker abandons car without giving necessary instructions, the shipment shall be subject to such instructions as may be given by the owner."

Movement of the car in question from the railroad yards, where it was located when appellant changed the ventilation, to the Piggly Wiggly Valley Company at Eleventh and Garland streets in Louisville, was more than a mere switching movement, and the direction by appellant to so move the car amounted to a reconsignment or diversion of the shipment. The car was diverted from First and Water streets in Louisville, where it would have been delivered to appellant, and at his direction was delivered to the Piggly Wiggly Valley Company at Eleventh and Garland streets, and all as part of the original transportation service, no switching or transfer charge being made. If Datillo desired to change the ventilation on the car, it was necessary under the rule, supra, to give his instructions in writing. When this car was transferred to the siding of the Piggly Wiggly Valley Company at Eleventh and Garland streets, the railroad employee in charge of it was still controlled by the written instructions of the consignor attached to the waybill.

The case of Gus Datillo Fruit Co. v. Illinois Central Railroad Co., 222 Ky. 41, 299 S. W. 1089, involved the converse of the question now before us. There a carload of bananas was consigned to the plaintiff at Louisville, and he reconsigned the car to Huntingburg, Ind. Before the car left Louisville he took out the plugs, opened and adjusted the ventilators, and gave to the railroad company a written statement that he had done so, and written instructions to keep the vents and plugs in the same condition, unless otherwise instructed, and no further instructions were ever given by him. When the shipment reached Huntingburg, the agent of the railroad at that point, conceiving that the car should be iced, caused the fasteners on the vents to be broken and had the bunkers of the car filled with ice. This was done without instructions from either the consignor or the consignee, and it was held that what was done was contrary to the instructions of the shipper, and that the carrier was liable for the damages resulting from such action. That case is clearly controlling here. If the carrier would have been liable for any damages resulting from not carrying out the written instructions of the shipper, although it might

have appeared proper under the circumstances to change the ventilation, it surely should not be held liable for complying with such instructions, although loss to the consignee may have resulted from a literal compliance therewith.

Appellant suggests that, even though the tariff provision relied on by appellee is applicable, it is an attempted limitation of liability, and void under the Cummins Amendment to the Interstate Commerce Act which provides in part:

"Any such common carrier . . . shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void." United States Statutes at Large, vol. 38, part 1, page 1197; United States Compiled Statutes, 1923 Supplement, vol. 3, page 2556 (49 USCA, sec. 20 [11]).

The rule in question does not attempt to limit the liability of the carrier in any manner prohibited by the statute. The rule is intended to regulate the handling of shipments, and not to limit the amount of recovery. The carrier is not attempting by the rule in question to protect itself from damages resulting from its own negligence or from the negligence of any other carrier into whose possession the property may go by virtue of the issuance of the bill of lading. In Davis v. Henderson, 266 U. S. 92, 45 S. Ct. 24, 69 L. Ed. 182, it was held that a tariff provision requiring orders for cars to be given in writing could not be waived by acceptance of oral

notice. The reason underlying the decision in that case applies with equal force here. The various employees of the appellee, who might from time to time have charge of the car after the oral order of reconsignment had been given, could not be expected to pass along verbal instructions which were in conflict with the written instructions. The purpose of the rule that protective service to be furnished to fruit in transit shall be governed by the shipper's written instructions is obvious. We conclude that the trial court properly sustained defendant's motion for a directed verdict on the first claim.

The second claim arose out of a shipment from Port Richmond, Pa., which came into the possession of the appellee at Latonia, Ky., and was carried by it to Louisville, Ky., and delivered to appellant. Appellant claims that the bananas were bruised and injured as the result of rough handling while in the custody of the appellee. The only errors relied on for a reversal as to this claim are the admission of incompetent evidence and failure to give proper instructions. The incompetent evidence complained of was evidence as to a standard contract of purchase and sale between banana importers and buyers, which provides that notice of every claim against the seller must be given immediately after the arrival at its destination of the car containing the bananas or fruit complained of, and a statement in writing of the basis of every claim must be filed with the seller within 24 hours thereafter, and in default of such notice or written statement the seller shall have the option to disregard any such claim. This evidence was no doubt incompetent, since this is not a suit between seller and purchaser, but between the purchaser and the carrier. However, the record discloses that this evidence was introduced in reference to claim No. 1, which was not submitted to the jury, and we do not think it could have misled them when considering claim No. 2.

The instruction complained of was the one defining the measure of damages and reads: "If the jury find for the plaintiff on the second paragraph of the petition they will award such sum in damages as equals the difference between the value of the bananas at the time they were received by the defendant and their fair market value at the time they were delivered to the plaintiff in Louisville, not exceeding the sum of $261." This instruction is not technically correct, since the true measure of damages is

the difference between the fair and reasonable market value of the bananas at the time and place of delivery in their then condition and their fair and reasonable market value at the same time and place in the condition they would have been if they had not been damaged in transit.

However, whatever defect existed in the instruction was cured by the first instruction, which required the jury to find for the plaintiff if they believed from the evidence that the bananas were bruised and injured while in possession of the defendant either before or after reaching Louisville. The jury, by returning a verdict for the defendant, found that no damage at all occurred while the bananas were in its possession, and they were not misled by the instruction complained of.

The judgment is therefore affirmed.