## VACCARO BROTHERS & CO. v. L. & N. R. R. CO.

(May 27, 1929.   Opinion and Decree.)
(June 24, 1929.   Rehearing Refused.)

See, also, Vaccaro Bros. & Co. vs. L. & N. R. Co., 11 La. App. 346, 123 So. 353.

E. J. Thilborger and James J. Cullinane, of New Orleans, attorneys for plaintiff, appellee.

Denegre, Leovy & Chaffe, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. On July 22, 1920, plaintiff delivered to defendant at New Orleans three cars of bananas to be transported to Atlanta, Ga. The shipments were consigned to plaintiff itself. They left New Orleans at 9 a. m., on July 23, 1920. During that day, and admittedly long before the shipments reached Montgomery, Ala., instructions were issued by plaintiff to defendant to divert the shipments at Montgomery to Nashville, Tenn., and there to deliver them to J. N. Golding.

Through negligence of the employes of defendant, the diversion instructions were overlooked, and the shipments, instead of being diverted to Nashville, were transported to Atlanta, the destination originally shown in the bills of lading. They arrived in Atlanta on the morning of July 25, 1920. There was no unusual delay in the journey to Atlanta. Stewart, the messenger employed by plaintiff to accompany these and other shipments, testified that the trip from New Orleans to Atlanta took about the usual time. Stewart also testified that when these shipments arrived in Atlanta they were in good merchantable condition.

Diversion instructions are given by the shipper to the railroad. The messenger, who accompanies the shipments, though he is employed by the shipper, knows nothing about these orders until he is told of them by railroad employes, at the diversion point. Therefore Stewart knew nothing

of the diversion orders issued in this case, and the failure to divert was not caused by his negligence, nor was it knowingly acquiesced in by him.

The bananas, of which these shipments were composed, were not the usual green shipping bananas, which, though perishable, will nevertheless stand shipment for several days, but were what is known as "turnings," which means, as the name suggests, bananas which are just beginning to turn ripe, and which can be shipped only a limited distance. In this connection Stewart said: "It is dangerous to ship these cars very much farther than Atlanta."

When the fruit arrived in Atlanta, Stewart, plaintiff's messenger, phoned R. D. Grove, plaintiff's agent in Atlanta, and advised that he had four cars of fruit for him. That Grove had been informed by plaintiff of the diversion orders is shown by the fact that he immediately said to Stewart: "No, you only ought to have one; * * * three cars diverted to Nashville."

Stewart left the fruit in question at Atlanta and accompanied other shipments to more distant points. That Grove was plaintiff's agent in Atlanta, and had authority to issue instructions in cases of this kind, is shown by the fact that on July 2, 1917, written authority had been issued by plaintiff, as follows:

"This is to inform you that Messrs. R. D. Grove & Co., of your city, are our authorized brokers for Atlanta and the adjacent territory, and we would thank you to kindly honor any instructions which they may give you relative to transferring, diverting, icing, etc., of shipments made by us."

Grove sold the fruit in Atlanta for $414.66, but it was not removed by the purchasers from the cars until July 27th, more than two days after its arrival there. Plaintiff had contracted to sell the fruit in Nashville for $1,303.50. It thus appears that plaintiff sustained a loss of $888.84.

Defendant denies liability for this loss and sets up several contentions in support of its denial of liability:

First. That there is no proof that the bananas, had they been properly diverted, would have arrived in Nashville in sound, merchantable condition.

Second. That there is no proof as to what would have been the value of the bananas, even if they had arrived in Nashville in sound, merchantable condition, because the value should be determined by market conditions, and not by the particular contract of sale.

Third. That there is no proof that the price at which the bananas were sold in Atlanta was a fair price and represented the true market value.

Fourth. That, in taking possession of the bananas in Atlanta, Grove, acting as agent for plaintiff, ratified and acquiesced in the action of defendant in failing to divert the shipments.

Fifth. That, had Grove not taken possession of the shipments in Atlanta, they would have been sent on from there, direct to Nashville, at which point they would have arrived on the morning of July 26th, which is the same time at which they would have arrived there, had the diversion orders been properly carried out.

We will discuss these contentions in inverse order.

In support of its fifth contention, defendant calls attention to that part of Stewart's testimony in which he states that the trip from New Orleans to Atlanta

took about the usual time, and that usually the trip from New Orleans to Nashville takes about 24 hours longer than the trip from New Orleans to Atlanta. Therefore, argues defendant's counsel, it is evident that the fruit, after its arrival in Atlanta, could have been sent on to Nashville, where it would have arrived within 24 hours, had Grove not accepted delivery at Atlanta.

While it is true that Stewart did testify that as a general thing the trip from New Orleans to Nashville requires 24 hours longer than the trip to Atlanta, he also stated that the shipment from Montgomery to Nashville requires from 12 to 28 hours, depending on train connections. As the evidence shows that these cars reached Montgomery at 5:45 in the morning of the 24th, it seems highly probable that they could easily have been in Nashville in the early morning of the 25th, which was the time at which they actually reached Atlanta. The shipments laid over in Montgomery from 5:45 in the morning to 8:45 that night, or exactly 15 hours. This delay resulted from the fact that there would have been no reason to rush them on to Atlanta, as they would not have arrived there until some time during that late afternoon or night, and could not have been put on the market until the next morning anyway, but, had they been going on to Nashville, it is probable that they would have left Montgomery during the morning on which they arrived there, so they could have reached Nashville in time for the next morning's market.

According to the testimony of Stewart, it would have required from 12 to 28 hours to go from Montgomery to Nashville, and, even accepting 28 hours as correct, it is evident that these shipments would have reached Nashville about 9 o'clock on the morning of the 25th, or one day sooner than they would have reached there, had they been forwarded from Atlanta.

As defendant admits its own negligence, but seeks to avoid liability therefor on the plea that the loss would have occurred anyway, and as the facts as to schedules of its own freight and special trains are matters peculiarly within its own knowledge, we think that the burden lay on it to prove affirmatively that the shipments would not have reached Nashville before the 26th, and that it was not justified, under the rules of evidence, in relying on conjectures, nor on probabilities.

Nor do we see any relief for defendant in its fourth contention. Grove testified, as did Stewart, that when the shipments reached Atlanta the bananas were in good condition for "turnings," but that they were yellow and could not be shipped further.

It was the duty of Grove, as agent for plaintiff, to minimize the loss. He was an expert, and in his judgment it was best to try to dispose of the bananas in Atlanta rather than to take the chance of shipping them on to Nashville. It is true that they might possibly have been sent on without loss, but this seemed improbable. Where one, by his negligence, has created a situation which will probably result in loss to another, he cannot complain if that other, in good faith, does what seems reasonable and proper in an effort to minimize the loss.

Defendant's third contention has given us considerable food for thought. It would seem, at first consideration, that plaintiff should have offered proof as to the reasonableness of the price at which the fruit was sold in Atlanta. Here again, however, we believe that plaintiff's case is saved by a proper application of the rules of evidence

as to the burden of proof. In the absence of a charge of fraud or bad faith, it may be assumed that the price received for the fruit was reasonable, and that plaintiff obtained for it all that it was reasonably worth. Defendant could have overcome this by introducing evidence to show that a better price could have been obtained. In the absence of such proof, we will assume the contrary to be true.

As to defendant's contention that the fruit should have been immediately removed from the cars and sold, we believe that, in view of the fact that Grove knew that the bananas were fast ripening, it may be accepted as certain that he sold them as speedily as possible.

Defendant's second contention is quite interesting, but, in our opinion, is satisfactorily answered by plaintiff. It is quite true that the market value, and not the contract price at which a particular sale may have been made, is, as a general rule, determinative of the quantum of loss sustained in a situation of this kind. This is true because, where the article is one easily procurable and which can be bought on the open market, it is the duty of one who has made a contract to sell, and who by the negligence of another is prevented from delivering the goods he intended to deliver, to go into the open market and purchase other goods to be used in fulfilling his contract. But where the goods are not readily procurable on the open market, and where no proof of actual market value is available, the contract price at which the goods were sold may, in our judgment, be assumed to be the actual value for the purpose of determining the amount of the loss. Particularly is this true where he who causes the loss offers no countervailing proof.

"In an action for the value of goods injured by delay in shipment, where the only evidence of value was the price at which they were sold, this, in the absence of evidence to the contrary, is sufficient to establish their market value. To show the amount of difference between the value of the goods in a sound condition and as injured, it may be shown what the goods brought when sold." 10 C. J. p. 387, sec. 596.

"One sale furnished some evidence, and when there is no proof to the contrary it is not improper to assume that a sale proven without objection is one which occurred in the normal and usual course of business and at the prevailing market price." Houston & T. C. R. Co. vs. Westbury (Tex. Civ. App.) 208 S. W. 383.

Defendant calls attention to the case of Gus Datillo Fruit Co. v. Louisville & Nashville R. Co., 226 Ky. 813, 11 S. W. (2d) 953. In this case there were two claims resulting from improper handling of bananas. In the second claim the defense was partially based on the fact that the measure of damage contended for was the difference between the value of the bananas at the time they were received by the defendant and their fair market value at the time they were delivered to the plaintiff at destination.

It is true that the court said:

"The true measure of damage is the difference between the fair and reasonable market value of the bananas at the time and place of delivery in their then condition and their fair and reasonable market value at the same time and place in the condition they would have been if they had not been damaged in transit."

We are in accord with this view, but the difference between that case and this is that in this case we are justified, in the absence of proof to the contrary, in assuming that the sale price represents the true market value.

We believe we have already disposed of the first contention. The bananas arrived in Atlanta on the morning of the 25th, in sound condition. Stewart's testimony, as a whole, leads us to the belief they could have arrived in Nashville, instead of Atlanta, at the same time, had the instructions been carried out. It may be assumed that, had they arrived in Nashville on the morning of the 25th, they would have been found in the same merchantable condition in which they were found on arrival in Atlanta, at that time.

As we have already stated, it would have been very easy for the defendant to offer proof that the shipments would not have reached Nashville until the 26th, if that is a fact. Had there been such proof in the record, our conclusions might have been different. The record convinces us that plaintiff did everything it could to minimize the loss, and that, therefore, it should recover such loss as it has actually sustained.

Defendant's legal contentions seem to us to be entirely sound, but its conclusions as to the facts are based rather on the absence of evidence than on proof of the truth of these facts, most of which facts, it itself could have proven, if true. The trial court felt that plaintiff was entitled to recover the amount of the loss, and in this we think it was correct.

As between the two parties, defendant, having made the error, should stand the loss. It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed, at the cost of appellant.